IN THE DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NAACP DELAWARE<br>PO Box 30134<br>Wilmington, Delaware | ) ) ) ) | |
| LAMOTTE JOHNS<br>514 West 6th Street<br>Wilmington, Delaware | ) ) ) ) | **CLASS ACTION**<br><br>C.A. No._____ |
| TRANECKA CHARLES<br>617 W. Fifth Street<br>Wilmington, Delaware | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CITY OF WILMINGTON<br>300 North Walnut Street<br>Wilmington, Delaware | ) ) ) ) | |
| WILFREDO CAMPOS, IN HIS CAPACITY AS<br>CHIEF OF POLICE<br>WILMINGTON POLICE DEPARTMENT<br>300 North Walnut Street<br>Wilmington, Delaware | ) ) ) ) ) ) | |
| MICHAEL PURZYCKI, IN HIS CAPACITY<br>AS MAYOR OF THE CITY OF WILMINGTON<br>800 N. French Street, 9th Floor<br>Wilmington, Delaware 19801 | ) ) ) ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

1.      This lawsuit seeks redress for a pattern and practice of unconstitutional policing by the Wilmington Police Department ("Department") under the control and oversight of the defendant City of Wilmington.

2.      The Department, primarily through the Wilmington Safe Streets program, has engaged in a pattern and practice of Fourth and Fourteenth Amendment violations by a) stopping, frisking, and searching pedestrians without reasonable suspicion or probable cause of criminal conduct, or of being armed and dangerous, b) stopping motor vehicles without cause to believe that the driver has committed criminal conduct or has violated the motor vehicle code, c) effectuating unreasonable searches without a warrant, d) effectuating unreasonable arrests; and  e) racially biased policing that is evidenced by large racial disparities demonstrating the targeting of Black pedestrians and drivers based on their race.

3.      The Department has failed, with deliberate indifference, to monitor its officers for compliance with constitutional practices, investigate and discipline officers who engage in the unconstitutional conduct alleged in this Complaint, and has by policy and practice failed with deliberate indifference to record and preserve records and information regarding the stops and frisks of civilians that were conducted in violation of the Fourth and Fourteenth Amendments, Title VI of the Civil Rights Act of 1964, and Delaware state law.

2

4.      This class action complaint seeks the certification of a class of persons harmed by the Department's policing practices and policies that violate the Fourth and Fourteenth Amendments.

## JURISDICTION

5.      This action arises under the Fourth and Fourteenth Amendments, Title VI of the Civil Rights Act of 1964, and Delaware law.

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1983. This Court has supplemental jurisdiction over the State law claims presented in this matter pursuant to 28 U.S.C. § 1367.

## VENUE

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2) as the parties are all located in this District, and the acts and omissions giving rise to the claims all occurred in this District.

## PARTIES

8.      Organizational Plaintiff, the NAACP Delaware State Conference of Branches ("NAACP-DE"), is a non-partisan organization affiliated with the National Association for the Advancement of Colored People.  NAACP-DE has seven branches located throughout the state. NAACP-DE's mission is to ensure the political, educational, social, and economic equality of rights of all persons and to eliminate race-based discrimination.

9.     Members of NAACP-DE and its branches are Delaware residents who suffer harm because of the Department's policies and practices that violate the Fourth and Fourteenth Amendments.  In particular, NAACP-DE has members and constituents who have been subject to racially biased policing by the Wilmington Police Department, including members and constituents who have been subject to unconstitutional (a) pedestrian stops, (b) motor vehicle stops, (c) warrantless searches, and (d) unreasonable arrests.

10.     NAACP-DE and its members are aggrieved by Defendants' actions and omissions described in this Complaint that substantially impede NAACP-DE's ability to further its goals and institutional purpose of eliminating unconstitutional police practices including racial discrimination.

11.     Class representative Plaintiff Lamotte Johns lives at 514 West 6th Street, Wilmington, DE.  He was harmed by the Department's policies, practices and customs of racially biased policing and Fourth Amendment violations.  He seeks injunctive relief on his own behalf and as a class representative for the class of persons similarly harmed by the Wilmington Police Department.

12.     Class representative Plaintiff Tranecka Charles lives at 617 West 5th Street, Wilmington, DE.  She was harmed by the Department's policies, practices and customs of racially biased policing and Fourth Amendment violations.   She seeks

injunctive relief on her own behalf and as a class representative for the class of persons similarly harmed by the Wilmington Police Department.

13.     Defendant City of Wilmington ("City") is a municipal corporation duly organized, existing and operating under and pursuant to the applicable laws of the State of Delaware.

14.     The City controls and operates the Wilmington Police Department ("Department"), which acts as the law enforcement arm of the City.

15.     Defendant Wilfredo Campos is Chief of Police of Wilmington Police Department and employed by the Department at 300 North Walnut Street, Wilmington Delaware. He is sued in his official capacity.

16.     Defendant Michael Purzycki, Mayor of the City of Wilmington, is employed by the City at 800 N. French Street, 9th Floor, Wilmington, Delaware, 19801.  He is sued in his official capacity.

## LEGAL FRAMEWORK AND FACTUAL ALLEGATIONS

17.     Under the Fourth Amendment, police officers may stop pedestrians or effectuate stops of cars only where the officer has reasonable grounds to believe that the person has committed, or is about to commit, a crime, or has violated the motor vehicle code, and may frisk or search a person only where there is reasonable suspicion that she is armed and dangerous or there is full probable cause for a search.

18.     Under the Equal Protection Clause of the Fourteenth Amendment, police officers may not engage in racially discriminatory pedestrian or traffic stops, and may not engage in other law enforcement practices, including frisks, searches and the executing of search and arrest warrants, that are racially discriminatory.

19.     Under 11 Del. Code Ann. §4321(d) probation officers are permitted to conduct "searches of individuals" under probation supervision, but searches of homes or vehicles are not statutorily authorized. Further, under Delaware Department of Corrections Bureau of Community Corrections Probation and Parole Procedure No. 7.19, probation officers must first obtain approval from their supervisor before conducting a search absent exigent circumstances, and enumerated factors (a "Search Checklist") must be considered when determining whether to authorize a search.

20.     This "Search Checklist" sets forth the factors to be considered in deciding whether to authorize a search: (1) sufficient reason to believe the probationer possesses contraband; (2) sufficient reason to believe the probationer is in

violation of the terms of probation or parole; (3) information from a reliable

informant indicating the probationer possesses contraband or is violating the law; and

(4) information from the informant is corroborated.

21.     The Department has engaged in systemic unconstitutional and illegal

stops, frisks, searches, and arrests, in violation of the Fourth Amendment, and has

engaged in systemic racial profiling and racially selective enforcement of the laws in

violation of the Fourteenth Amendment.

22.      Department records that have been produced in criminal proceedings

reflect the racially disparate and biased patterns of "proactive patrol" stops. For

example, discovery ordered  for traffic stops conducted by three officers for the

period June 1, 2019, through May 31, 2020, showed that the traffic-related arrests by

these officers were comprised of *fifty-eight* Black motorists, and only *one* white

motorist (who was accompanied by a Black passenger). The named plaintiffs have

suffered violations of their rights as a direct and proximate result of these policies and

practices.

23.     As alleged in this Complaint, there have been systemic violations of the

rights of Black residents of Wilmington pursuant to Departmental practices, policies,

and customs for the last several years.  For example, on June 27, 2023, in the

evening, Plaintiff Lamotte Johns was in his home when twelve Department Officers,

led by Officer Benjamin, arrived at his home.  According to Officer Benjamin, the

twelve Department Officers were looking for Mr. Javonte Waters, a former roommate of Mr. Johns two years prior. In March 2023, Officer Benjamin had similarly come to Mr. Johns' home to locate Mr. Waters, and, at that time, Mr. Johns informed Officer Benjamin that Mr. Waters had not lived with Mr. Johns since September 2020. Again, Mr. John's told Officer Benjamin that Mr. Waters did not live at his residence, and in any event, was not currently there. Mr. Johns then asked the Department Officers to leave. Undeterred, Officer Benjamin used his foot as a wedge and forced Mr. John's front door open. Officer Benjamin and the Department Officers proceeded to conduct a search of Mr. John's entire home without a warrant or probable cause.

24.     Upon information and belief, the Department arrested Mr. Waters on June 27, 2023 prior to searching Mr. Johns' home, a fact known to Officer Benjamin at the time he led the search of Mr. Johns' home on June 27, 2023.

25.     On November 6, 2022 at 8:30 a.m., Plaintiff Tranecka Charles was at home with her husband, son, two daughters, the fiancé of one of her daughters, and her three grandchildren when Ms. Charles' nineteen-year-old daughter—who had recently been released from the hospital after receiving treatment for a blood clot—suddenly stopped breathing and became unresponsive. Ms. Charles called 9-1-1. An ambulance and paramedics arrived at Ms. Charles' house, along with numerous Department Officers.  Upon entering Ms. Charles' home, the paramedics went upstairs to treat Ms. Charles' daughter, and Ms. Charles went downstairs.

26.     The officers questioned Ms. Charles as to whether her daughter had used drugs. Ms. Charles stated that her daughter did not do drugs and that she had been in the hospital with a blood clot weeks earlier. Ms. Charles was then instructed by the officers that she was not allowed to go upstairs to check on her daughter.

27.     The paramedics then informed Ms. Charles and her family that her daughter had passed away from an apparent cardiac arrest. Grief stricken, Ms. Charles and her family went outside for some fresh air, but were not allowed to re enter their home, on the pretextual ground that an "investigation" was ongoing.

28.     When Ms. Charles' son entered the house, he was tackled by officers who pinned him to the ground.  Ms. Charles' son stated that he could not breathe, but the officer who had a knee on his chest cavity did not stop this excessive use of force. Ms. Charles was physically prevented from entering to calm her son.

29.     Meanwhile, other officers forcibly seized and dragged Ms. Charles and her other daughter down the stairs outside their house. The Department officers threatened to arrest Ms. Charles for resisting arrest. The officers also temporarily arrested and detained Ms. Charles' daughter in the back of a police car.  At the same time, Department officers placed Ms. Charles' son in handcuffs, and arrested him, after causing injuries to his left shoulder.

30.     Department officers detained Ms. Charles' son at the local police station until about 8:00 p.m. that same day and then released him. Ms. Charles' son

was charged with resisting arrest and assaulting an officer. The charges against Ms. Charles' son were dismissed in court.

31.     Department officers illegally entered the residence of a Wilmington resident on three separate occasions without a warrant and without probable cause. In one of these incidents, on September 18, 2021, Department officers, with firearms drawn, entered her son's bedroom where he was playing a video game, causing fear and trauma.  The Department officers entered through the back door of the home without the resident's knowledge or consent.

32.     A written complaint was filed with the Wilmington Police Department on October 5, 2021; on February 16, 2022 they responded stating "the complaint is unsubstantiated."

33.     This pattern of systemic violations of the rights of Black residents of Wilmington pursuant to Departmental practices, policies, and customs has occurred for the last several years.  For example, on October 20, 2020, Department officers violated the Fourth Amendment rights of Charles M. Breakley Jr., an Army veteran who served in Afghanistan.  Mr. Breakley was sitting in his car at a gasoline pump when several unmarked police cars surrounded the car and officers searched him and the car without probable cause and seized his house keys and money. The Department officers threatened to charge Mr. Breakley with a crime unless he agreed to act as an informant in an unrelated matter.  Department officers then used the house keys to

unlawfully enter Mr. Breakley's residence and conducted an unreasonable warrantless search that produced no contraband.

34.    On August 21, 2020, a team of Department officers violated the Fourth Amendment rights of Terrell Dixon-El, who lived with his mother at 95 Vandever Avenue in Wilmington.  Mr. Dixon-El was in compliance with the conditions of his probation. On August 21, 2020, after already visiting Mr. Dixon-El's mother's home for the second day in a row, the Department and approximately eight Safe Streets officers went to Mr. Dixon-El's girlfriend's house, 2000 N. Washington, to conduct an additional home visit. The 18-year-old son of Mr. Dixon-El's girlfriend answered the door and stated that Mr. Dixon-El lived there. The officers then entered the home without a warrant or other legal justification, purportedly claiming they "smelled marijuana."  Mr. Dixon-El was legally permitted to use marijuana for medicinal purposes to treat the pain from his hip surgeries for bone disease. When Mr. Dixon-El arrived at his girlfriend's residence sometime later, a Department Officer arrested him on the basis of evidence supposedly found during the warrantless search of his girlfriend's home.  The Department Officer told Mr. Dixon-El he would be released if he assisted them in identifying suspects in photographs.

35.    The Department's record-keeping policies and practices are designed to obscure and cover-up constitutional violations by officers who engage in racially biased policing.  For example, the Department does not require its officers to report

and record all stops, frisks, and searches, or to document the reasons for these interactions with civilians. In light of repeated complaints about these practices, the Department's failure to track and record each stop, frisk, or search constitutes deliberate indifference to the civil rights of Wilmington's residents.

36.    In one stark example of the Wilmington Police Department's policy of not requiring officers to report or record all stops, frisks, and searches, Safe Streets Officer James Wiggins testified in court proceedings that over a four-year period he made more than one thousand traffic stops. However, pursuant to the Department's policies and practices, Office Wiggins did not record or report these stops unless they resulted in an arrest or motor vehicle citations. *See State v. Cornelius* Cr. A. No. 1908008822 (Del. Super. Ct. July 8, 2021) at 11.

37.    The Department's policy and practice of not reporting encounters with civilians that result in a stop, frisk, use of force, or any other type of search or seizure is constitutionally infirm.  Upon information and belief, the practice and policy of not recording and maintaining data on encounters with civilians that result in a stop, frisk, search or seizure is intended to mask Fourth and Fourteenth Amendment violations.

38.    The car stop by Safe Street program Officer James Wiggins, referenced, *supra,* para. [39], involved a Black male whose car was searched without a warrant or probable cause.  The Delaware Superior Court suppressed evidence found during the

search, holding that the State had failed to prove a valid traffic stop and lacked probable cause to search the car. *State v. Cornelius* Cr. A. No. 1908008822, July 8, 2021, Opinion at 11.

39.     The Court focused as well on the Department's failure to ensure proper recordkeeping and noted that Officer Wiggins testified that Safe Streets' "policy" is to work "off-channel." *State v. Cornelius*, Cr. A. No. 1908008822, at 11.  Upon information and belief, Safe Street officers have a private, unrecorded, radio frequency reserved just for their communications and the Department encourages its officers to use this unrecorded frequency as opposed to other police radio frequencies. By failing to require officers to use a recorded channel, the Department seeks to prevent the detection of its pattern and practice of racially biased activity and otherwise illegal car and *Terry* stops.

40.     Upon information and belief, the Department has also condoned a practice of officers who have secured warrants based on false and misleading allegations that "confidential informants" provided information when in fact the information came from a review of social media accounts.  For example, Corporal Jhalil Akil secured an arrest warrant for Deonte Robinson based on allegations that he had learned from a confidential informant that Mr. Robinson was in possession of a firearm.  But Corporal Akil did not have a confidential informant; instead, under questioning, he admitted he relied upon public Instagram posting of Mr. Robinson

with a gun, and that he had been "always taught" to falsely describe social media accounts in warrant affidavits as "confidential informants."

41.    Upon information and belief, the Department did not take any disciplinary action against Corporal Akil for his knowingly false affidavit and testimony. The Wilmington Police Department's Office of Professional Standards concluded that a complaint was "unsubstantiated." In addition to Corporal Akil's testimony that he was "taught" to falsify arrest warrants, by condoning Corporal Akil's conduct, the Department has effectively adopted falsification of arrest warrants as its practice and policy.

42.    Department officers have also engaged in a pattern and practice of entering residences – particularly residences of Black persons – without a valid warrant or consent.

43.    Specifically, Department officers, under the Safe Streets initiative, team-up with probation officers to conduct unreasonable searches of residences and persons in violation of the Fourth and Fourteenth Amendments and State Law.  *See, e.g., State v. Pokiski*, 2017 WL 2651714 (Super. Ct. Del, June 19, 2017) (granting motion to suppress); *State v. Smith*, 2013 WL 6057814 (Del. Super. Oct. 16, 2013) (same).

44.    The racial demographics of the City and of the Department support the claims of racial disparities and racial bias in policing.

14

45.     According to the 2020 decennial census, approximately fifty-seven percent of the City of Wilmington's population is Black; eleven percent is Hispanic or Latino; and thirty-five percent is White.

46.     The Wilmington Police Department is predominantly white.  As of January 2022, of the approximately 300 sworn officers, sixty-five percent were white, twenty-four percent were Black, and nine percent were Hispanic.

47.     The demographic disparities as of January 2022 are even more pronounced in the command chain.  Specifically, of the fifty-six Captains, Lieutenants, and Sergeants, nine are Black and two are Hispanic; and none of these Black or Hispanic officers are Lieutenants. There are seven Black or Hispanic Sergeants and no Black or Hispanic Captains, Lieutenants, or Sergeants in the Criminal Investigations Division or the Drug and Organized Crime Division.

48.     The Wilmington Police Department has permitted racially biased practices by its officers.  For example, for a three-year period, ending only in February 2022, the Department permitted the display of a trophy awarded to "The Whitest Black Guy in the Office" on the desk of a Black Captain.

49.     The Department has failed to ensure the integrity of law enforcement practices of its officers. The Department and its Office of Professional Standards (OPS) routinely fails to conduct adequate investigations of officers alleged to have

engaged in unconstitutional conduct, and the Department routinely fails to adequately discipline officers who have engaged in unconstitutional conduct.

50.     In the period 2014-2016, the Department received 413 external complaints concerning use of force, and in every case OPS determined that the complaint was unsubstantiated or unfounded.  And as of 2017, the Department stopped reporting on its investigations of use of force complaints.

51.     Moreover, the Department does not report on racial profiling complaints.  The Department's failure to report racial profiling and use of force complaints is part of the Department's overall effort to mask Fourth and Fourteenth Amendment violations.

52.     The City of Wilmington has been on notice of the Department's unconstitutional policing practices for many years.

## CLASS ALLEGATIONS

53.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

54.     Plaintiffs seek certification of classes of persons who have suffered and who, without judicial relief, will suffer violations of their Fourth and Fourteenth Amendment rights due to illegal stops, frisks, searches and arrests, and by racially discriminatory law enforcement policies and practices as set forth in this Complaint.

55.     The Class contains so many members that joinder of all members is impracticable.

56.     The Class presents questions of law and facts that are common to the class.

57.     The claims of the Class Representatives for each Class are typical of the claims of the class.

58.     The Class Representatives will fairly and adequately protect the members of the Class.

## COUNT I – PATTERN AND PRACTICE OF UNCONSTITUTIONAL PEDESTRIAN STOPS

59.     Plaintiffs hereby incorporate by reference all other paragraphs of this Complaint.

60.     Plaintiffs and Class Members seek relief pursuant to 42 U.S.C. § 1983.

61.     Defendants have implemented and enforced a policy, practice and/or custom of stopping and frisking pedestrians without probable cause or reasonable suspicion of criminal conduct as required by the Fourth and Fourteenth Amendments.

62.     The Constitutional violations suffered by Plaintiffs and the Class are directly and proximately caused by policies, practices, and customs of the Defendants.

63.     Defendants have acted with deliberate indifference to the Fourth Amendment rights of Plaintiffs and members of the Class and as a direct and

proximate result of the acts and omissions of Defendants, the Fourth and Fourteenth Amendment rights of Plaintiffs and the class have been violated.

64.     The Plaintiffs and Class Members have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from continuing their policy, practice and/or custom of unconstitutional stops, detentions, searches and frisks.

65.     Defendants have by the above-described actions deprived Plaintiffs and the Class of their rights to be free from unlawful stops, searches, frisks and detention. As a result, Plaintiffs and the Class have suffered and will continue to suffer harm in violation of their rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

## COUNT II – PATTERN AND PRACTICE OF UNCONSTITUTIONAL TRAFFIC STOPS

66.     Plaintiffs hereby incorporate by reference all other paragraphs of this Complaint.

67.     Plaintiffs and Class Members seek relief pursuant to 42 U.S.C. § 1983.

68.     Defendants have implemented and enforced a policy, practice and/or custom of stopping and searching operators of motor vehicles without probable cause or reasonable suspicion of criminal conduct as required by the Fourth and Fourteenth Amendments.

69.     The Constitutional violations suffered by Plaintiffs and the Class are directly and proximately caused by policies, practices and/or customs implemented and enforced by the Defendants.

70.     Defendants have acted with deliberate indifference to the Fourth Amendment rights of Plaintiffs and members of the Class and as a direct and proximate result of the acts and omissions of Defendants, the Fourth and Fourteenth Amendment rights of Plaintiffs and the class have been violated.

71.     The Plaintiffs and Class Members have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from continuing their policy, practice and/or custom of unconstitutional stops, detentions, searches and frisks.

72.     Defendants have by the above-described actions deprived Plaintiffs and the Class of their rights to be free from unlawful stops, searches, frisks and detention. As a result, Plaintiffs and the Class have suffered and will continue to suffer harm in violation of their rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

## COUNT III – PATTERN AND PRACTICE OF UNCONSTITUTIONAL SEARCHES AND SEIZURES

73.     Plaintiffs hereby incorporate by reference all other paragraphs of this Complaint.

74.     Plaintiffs and Class Members seek relief pursuant to 42 U.S.C. § 1983.

75.     Defendants have implemented and enforced a policy, practice and/or custom of effectuating unreasonable searches and seizures of the members of the class (i) without warrants and without notice, and (ii) with falsified, misleading warrant applications to obtain warrants, in violation of the Fourth and Fourteenth Amendments.

76.     The Constitutional violations suffered by Plaintiffs and the Class are directly and proximately caused by the policies, practices and/or customs implemented and enforced by Defendants.

77.     The Plaintiffs and Class Members have no adequate remedy at law and will continue to suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from continuing their policy, practice and/or custom of effectuating unreasonable warrantless searches and seizures.

78.     Defendants have, by the above-described actions, deprived Plaintiffs and Class Members of their Fourth Amendment right to be free from unreasonable searches.  As a result, Plaintiffs and the Class have suffered and will continue to suffer harm in violation of their rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

**COUNT IV – PATTERN AND PRACTICE OF RACIALLY BIASED POLICING**

79.     Plaintiffs hereby incorporate by reference all other paragraphs of this Complaint.

80.     Defendants have implemented and enforced a policy, practice and/or custom of stopping, frisking, searching and arresting Plaintiffs and Class Members based on their race and/or national origin in violation of the Equal Protection Clause of the Fourteenth Amendment.

81.     These Constitutional violations are directly and proximately caused by policies, practices and/or customs of the Defendants as set forth in this Complaint.

82.     Defendants have acted with an intent to discriminate on the basis of race or national origin in police practices relating to stops, detentions, frisks and searches.  As a direct and proximate result of the acts and omissions of the Defendants, the Fourteenth Amendment rights of the named Plaintiffs and the Class Members have been violated.

83.     Defendants have intentionally targeted Black and Latino individuals for unconstitutional stops in areas where Plaintiffs and Class Members reside or visit. Under these practices, policies and/or customs, the Equal Protections rights of the named Plaintiffs and the Class Members will continue to be violated.

84.     The Plaintiffs and Class Members have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless and Defendants are enjoined from continuing their policy, practice and/or custom of unconstitutional stops, arrests, searches, and frisks.

85.     Defendants have by the above-described actions and omissions deprived the Plaintiffs and the Class Members of their right to be free from unlawful stops, seizures, frisks, searches, and arrests.  As a result, Plaintiffs and Class Members have suffered and will continue to suffer harm in violation of their rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

## COUNT V – DISCRIMINATION ON THE BASIS OF RACE, COLOR, AND NATIONAL ORIGIN IN PROGRAMS AND ACTIVITIES RECEIVING FEDERAL FINANCIAL ASSISTANCE

86.     Plaintiffs hereby incorporate by reference all other paragraphs of this Complaint.

87.     Plaintiffs and Class Members seek relief pursuant to 42 U.S.C. § 2000d *et seq*.

88.     Defendants have implemented and enforced a policy, practice and/or custom of unconstitutional searches and seizures of the members of the class based on their race and/or national origin in violation of Title VI of the Civil Rights Act of 1964, Title VI, 42 U.S.C. § 2000d.

89.     These Constitutional violations are directly and proximately caused by policies, practices and/or customs of the Defendants as set forth in this Complaint.

90.     Defendant City of Wilmington received—and continues to receive—federal funding and has acted with an intent to discriminate on the basis of race or national origin in police practices relating to stops, detentions, frisks and

searches.  As a direct and proximate result of the acts and omissions of the
Defendants, the rights of the named Plaintiffs and the Class Members have been
violated.

91.    Defendants have intentionally targeted Black and Latino individuals for
unconstitutional stops in areas where Plaintiffs and Class Members reside or visit.
Under these practices, policies and/or customs, the Equal Protections rights of the
named Plaintiffs and the Class Members will continue to be violated.

92.    The Plaintiffs and Class Members have no adequate remedy at law and
will suffer serious and irreparable harm to their Constitutional rights unless and
Defendants are enjoined from continuing their policy, practice and/or custom of
unconstitutional stops, arrests, searches, and frisks.

93.    Defendants have by the above-described actions and omissions
deprived the Plaintiffs and the Class Members of their right to be free from unlawful
stops, seizures, frisks, searches, and arrests.  As a result, Plaintiffs and Class
Members have suffered and will continue to suffer harm in violation of their rights
under Title VI of the Civil Rights Act of 1964, Title VI, 42 U.S.C. § 2000d.

**COUNT VI – VIOLATION OF STATE LAW AGAINST SEARCHES
CONDUCTED BY PROBATION OFFICERS**

94.    Plaintiffs hereby incorporate by reference all other paragraphs of this
Complaint.

95.     11 Del. Code Ann. § 4321(d) allows probation officers to conduct "searches of individuals." This language unambiguously refers only to searches of "individuals," not searches of their homes or vehicles.

96.      Other Delaware statutes refer to searches of "any person, house, building, conveyance, place or other thing." *See* 11 Del. Code Ann. § 2301. Under standards of statutory interpretation, the specificity of the language in § 2301 precludes searches of t "houses, building, conveyances, places, and other things" under § 4321(d). Further, the legislative intent is clear. The Committee Report on HB 524 from the 135th General Assembly (1990) states " that the officers should have the authority to search the individual; not his or her premises. Attorney opinion does not grant them authority to search premises."

97.     By information and belief, Defendants frequently conduct searches of homes and vehicles without a warrant, violating 11 Del. Code Ann. § 4321(d).

98.     By information and belief, Defendants frequently fail to conduct the "Search Checklist" required by Delaware Department of Corrections Bureau of Community Corrections Probation and Parole Procedure No. 7.19. By not complying with the requirements of the regulation, Defendants have violated Delaware law.

99.     The Plaintiffs and Class Members have no adequate remedy at law and will suffer serious and irreparable harm to their statutory rights unless and until Defendants are enjoined from continuing their policy, practice, and/or custom of

searching homes and vehicles and searching individuals without first applying the factors of the "Search Checklist."

100.   Defendants have by the above-described actions and omissions deprived the Plaintiffs and the Class Members of their right to be free from unlawful searches.  As a result, Plaintiffs and Class Members have suffered and will continue to suffer harm in violation of their rights under 11 Del. Code Ann. §4321(d) and by Delaware Department of Corrections Bureau of Community Corrections Probation and Parole Procedure No. 7.19.

## RELIEF REQUESTED

WHEREFORE, the named Plaintiffs and the members of the Class they seek to represent request that the Court:

A.  Issue an order certifying this as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, with the named plaintiffs serving as class representatives;

B. Issue a class-wide judgment declaring that the Wilmington Police Department's policies, practices, and customs violate the Constitution and statutes of the United States and Delaware law;

C. Issue an order for permanent injunctive relief:

D. Appoint a monitor to coordinate and oversee Defendants' development of and compliance with the means of remedying the legal violations described herein;

E. Award reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

F. Award costs of litigation pursuant to 42 U.S.C. §1920 and § 1988; and

G. Award such other and further relief as this Court may deem appropriate and just and in the interests of justice.

Date:  October 24, 2023                          Respectfully submitted,


/s/ Dwayne J. Bensing
Dwayne J. Bensing (#6754)
ACLU-Delaware
100 W. 10th Street, #706
Wilmington, DE 19801
(302) 295-2113
dbensing@aclu-de.org

/s/ John A. Freedman
John A. Freedman*
Laura Shores*
Jocelyn Porter*
**pro hac vice forthcoming**
Arnold & Porter
601 Massachusetts Avenue N.W.
Washington, DC 20001
(202) 942-5316
john.freedman@arnoldporter.com

/s/ David Rudovsky
David Rudovsky*
**pro hac vice forthcoming**
Kairys, Rudovsky, Messing, Feinberg & Lin LLP
The Cast Iron Building
718 Arch Street, Suite 501
Philadelphia, PA 19106
(215) 925-2298
drudovsky@krlawphila.com


**Attorneys for Plaintiffs**