IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NAACP DELAWARE, LAMOTTE JOHNS,   )
TRANECKA CHARLES, NICKEA ROWE,   )
SEMAJ GWYN, NATASHA GREEN, and   )
ANTHONY GREEN,                   )
                                 )
              Plaintiffs,        )
                                 )   Civil Action No.   23-1205-GBW
       v.                        )
                                 )
CITY OF WILMINGTON, WILFREDO     )
CAMPOS, in his official capacity as Chief of   )
Police of the Wilmington Police Department,   )
and MICHAEL PURZYCKI, in his official   )
capacity as Mayor of the City of   )
Wilmington,                      )
                                 )
              Defendants.        )
                                 )

## MEMORANDUM OPINION

Dwayne J. Bensing, ACLU-DELAWARE, Wilmington, DE; David Rudovsky, KAIRYS, RUDOVSKY, MESSING, FEINBERG & LIN LLP, Philadelphia, PA; John A. Freedman, Laura Shores, Jocelyn Porter, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, DC; Andrew C. Johnson, ARNOLD & PORTER KAYE SCHOLER LLP, San Francisco, CA– attorneys for Plaintiffs.


John D. Hendershot, Kelly E. Farnan, Christie D. Haynes, Sara M. Metzler, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Rosamaria Tassone-DiNardo, CITY OF WILMINGTON LAW DEPARTMENT, Wilmington, DE – attorneys for Defendants.


July 14, 2025
Wilmington, Delaware

**WILLIAMS, U.S. DISTRICT JUDGE:**

Before the Court is Defendants City of Wilmington's ("the City"), Wilfredo Campos'

("Campos"), and Michael Purzycki's ("Purzycki") (collectively, "Defendants") Motion to Dismiss

or, in the alternative, to Strike Class Action Certification Allegations ("the Motion") (D.I. 15).

The Motion is fully briefed. (D.I. 16; D.I. 19; D.I. 21). For the reasons explained below, the

Court concludes that it lacks subject matter jurisdiction over this action and dismisses, without

prejudice, Plaintiffs' First Amended Complaint (D.I. 13). As a result, the Court denies-as-moot

the Motion (D.I. 15).

## I.    **BACKGROUND**

Plaintiffs in this putative class action are NAACP Delaware State Conference of Branches

("NAACP-DE") and LaMotte Johns, Tranecka Charles, Nickea Rowe, Semaj Gwyn, Natasha

Green, and Anthony Green (collectively, "the Individual Plaintiffs,"[1] and with NAACP-DE,

"Plaintiffs"). NAACP-DE "is a non-partisan organization affiliated with the National

Association for the Advancement of Colored People." (D.I. 13 ¶ 8). "The fundamental mission

of NAACP-DE is to secure the political, educational, social and economic equality of rights in

order to eliminate race-based discrimination and ensure the health and well-being of all persons."

(*Id.* ¶ 9). The Individual Plaintiffs are Black residents of Wilmington, Delaware. (*Id.* ¶¶ 14-19).

Each of the Individual Plaintiffs separately alleges that he/she was harmed by the Wilmington

Police Department's ("the WPD") unconstitutional polices, practices or customs. (*Id.*). More

specifically, LaMotte Johns and Tranecka Charles allege that they were the subjects of

unconstitutional residential searches; Anthony Green, Nickea Rowe, and Semaj Gwyn allege that

they were the subjects of unconstitutional vehicle stops; and Anthony Green and Natasha Green

---

[1]    The Amended Complaint also refers to the Individual Plaintiffs as "class representatives."
(*See* D.I. 13).

1

allege that they were the subjects of unconstitutional pedestrian stops.    (*Id.* ¶¶ 35-71).    Plaintiffs also aver that the WPD's "record-keeping policies, practices and customs" are unconstitutional because the WPD does not require its officers to "report and record all stops, frisks and searches, to document the reasons for these interactions with civilians, or to record the race of the individuals stopped."    (*Id.* ¶ 72).    Further, Plaintiffs allege that WPD officers have engaged "in a pattern and practice of entering residences – particularly residences of Black persons – without a valid warrant or consent under the pretense of assisting probation officers," who are part of the WPD's "Operation Safe Streets."[2]    (*Id.* ¶ 84).    Plaintiffs bring this action against the City, which oversees and controls the WPD, Campos in his official capacity as the WPD Chief of Police, and Purzycki in his official capacity as Mayor of Wilmington.    (*Id.* ¶¶ 21-23).

## II.    PROCEURAL POSTURE

On January 31, 2024, Plaintiffs filed a First Amended Complaint ("the Amended Complaint").    (D.I. 13).    The Amended Complaint asserts five causes of action: (I) Pattern and Practice of Unconstitutional Pedestrian Stops; (II) Pattern and Practice of Unconstitutional Traffic Stops; (III) Pattern and Practice of Unconstitutional Searches and Seizures of People and Homes; (IV) Pattern and Practice of Racially Biased Policing; and (V) Discrimination on the Basis of Race, Color, and National Origin in Programs and Activities Receiving Federal Financial Assistance. (*Id.* ¶¶ 102-136).    Counts I through IV are brought pursuant to 42 U.S.C. § 1983 ("§ 1983") and Count V is brought pursuant to 42 U.S.C. § 2000d.    ("§ 2000d").    (*Id.*).    Plaintiffs seek class certification; a declaratory judgment; permanent injunctive relief; the appointment of "a monitor

---

[2]    "Operation Safe Streets Initiative is an enhanced law enforcement . . . initiative that pairs adult probation officers with police officers, and targets high-risk probationers to ensure that they remain in compliance with curfews and other conditions of their probation." (D.I. 13 ¶ 21 (internal quotation marks omitted)).    Operation Safe Streets "also engages in a broader range of law enforcement activity" such as targeting violent offenders and gun and drug offenders.    (*Id.*).

to coordinate and oversee Defendants' development of and compliance with the means of remedying the legal violations [alleged];" reasonable attorneys' fees; litigation costs; and any other relief the Court deems just.  (*Id.* at 37).

On March 6, 2024, Defendants filed the instant Motion to Dismiss or, in the alternative, to Strike Class Certification Allegations.  (D.I. 15).  That same day, Defendants filed an Opening Brief in Support of the Motion.  (D.I. 16).  On April 3, 2024, Plaintiffs filed a Response Brief. (D.I. 19).  On April 17, 2024, Defendants filed a Reply Brief.  (D.I. 21).  Defendants also filed a Request for Oral Argument on the Motion on April 24, 2024.  (D.I. 22).

## III.  **LEGAL STANDARDS**

### A.  **Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a complaint must be dismissed if it "[fails] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint.  *E.I. DuPont de Nemours & Co. v. Great Lakes Chem. Corp.*, 383 F. Supp. 2d 642, 644-45 (D. Del. 2005).  "To survive a Rule 12(b)(6) motion, a complaint must set forth enough factual allegations to 'state a claim to relief that is plausible on its face.'"  *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When reviewing a motion to dismiss under Rule 12(b)(6), the Court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Additionally, the Court must construe all allegations

and facts in the light most favorable to the non-movant plaintiff and resolve all reasonable inferences in the plaintiff's favor. *See Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005); *see also Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept "bald assertions," "unsupported conclusions," or "unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906, n.8 (3d Cir. 1997) (internal quotation marks omitted). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks and citations omitted).

### B.    Article III Standing

The Court possesses an independent duty to address issues of subject matter jurisdiction *sua sponte*, and it may do so at any stage of the litigation. *See Associated Builders & Contactors Western Pennsylvania v. Cmty. Coll. of Allegheny County*, 81 F.4th 279, 287 (3d Cir. 2023). Article III standing is a component of subject matter jurisdiction that cannot be waived or forfeited. *Id.* (citing to *Burton v. Schamp* 25 F.4th 198, 207 (3d Cir. 2022)). "The Supreme Court has repeatedly described the question of Article III standing as a 'threshold' issue." *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n*, 959 F.3d 569, 575 (3d Cir. 2020) (citing to *Horne v. Flores*, 557 U.S. 433, 445 (2009)). Article III standing requires that the plaintiff retains a "personal stake" in the case and, thus, guarantees that the federal judicial power is confined to the resolution of "cases" and "controversies." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing to U.S. Const. Art. III). The plaintiff bears the burden of establishing Article III standing. *Id.* at 430-31.

To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Additionally, "[s]tanding is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n. 6 (1996). Instead, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 186 (2000). "The same principle applies when there are multiple plaintiffs." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). Specifically, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Id.* Where a court lacks standing, it may not consider the substantive merits of the case before it. *See Davis v. Wells Fargo*, 824 F.3d 333, 346-47 (3d Cir. 2016).

## IV.    ANALYSIS

Defendants assert that dismissal is warranted for the following reasons: (1) the claims against Purzycki and Campos are redundant of the claims against the City; (2) each of the Individual Plaintiffs lack standing to pursue injunctive relief; (3) the NAACP-DE lacks associational standing; (4) Plaintiffs fail to plausibly allege a policy that violates Plaintiffs' rights; and (5) the class allegations should be stricken because the class lacks cohesiveness and commonality. (*See* D.I. 16). Most significantly, though, Defendants assert that Plaintiffs lack standing under the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ("*Lyons*"). (D.I. 16 at 11-15). Plaintiffs contend that Defendants' reliance on *Lyons* is misplaced because Plaintiffs have plausibly alleged an unconstitutional policy sufficient to establish municipal liability. (D.I. 19 at 15-16). The Court disagrees with Plaintiffs. Both the Individual Plaintiffs and NAACP-DE fail to plausibly allege that they face "a real and immediate threat that [they] will be wronged again" by Defendants; thus, Plaintiffs do not possess the requisite Article III standing to maintain this lawsuit. *Lyons*, 461 U.S. at 111.

A.      **Plaintiffs Lack Article III Standing to Pursue Injunctive or Declaratory Relief**

In this action, Plaintiffs seek (1) an order certifying the case as a class action; (2) "a class-wide judgment declaring that the Wilmington Police Department's policies, practices, and customs violate the Constitution and statutes of the United States;" (3) permanent injunctive relief; (4) appointment of a monitor to oversee compliance; (5) reasonable attorneys' fees and costs of litigation; and (6) "such other and further relief as this Court may deem appropriate and just." (D.I. 13 at 37 (relief requested)).    As such, Plaintiffs primarily seek *injunctive* and *declaratory* relief – equitable remedies.[3]

Where, as here, a plaintiff "seeks prospective (forward-looking relief) in the form of an injunction or a declaratory judgment, they must show that they are likely to suffer future injury" in order to satisfy Article III.    *Yaw v. Delaware River Basin Comm'n Del. Riverkeeper Network*, 49 F.4th 302, 318 (3d Cir. 2022) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). The plaintiff's "future injury must also be 'imminent,' meaning that it is 'certainly impending' rather than just merely possible." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).  "Past exposure to illegal conduct does not in itself show a present case or controversy

---

[3]      Plaintiffs fail to allege monetary (or "legal") damages. Further, Plaintiffs' request for attorney's fees and costs, or any other relief the Court deems just, does not provide Plaintiffs with an actionable remedy. *See Thulen v. Am. Fedn. & Mun. Emples. N.J. Council*, 63, 844 Fed. App'x 515, 519 (3d Cir. 2021) (holding that "failure to expressly seek damages forecloses that relief," including "catch-all" provisions requesting "all other relief the [District] Court deems just proper, and equitable.") (internal quotation marks omitted).  Indeed, "the mere fact that continued adjudication would provide a remedy for an injury that is only a byproduct of the suit itself does not mean that the injury is cognizable under Article III."    *Diamond v. Charles*, 476 U.S. 54, 70-71 (1986); *see also Hole v. Tex. A&M Univ.*, 360 Fed. App'x 571, 573-74 (5th Cir. 2010) (holding that, in a Section 1983 action, "[a] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit.").

regarding injunctive relief," unless the plaintiff can demonstrate "continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Here, Plaintiffs do not plausibly allege that they face an imminent, continuing threat of harm from Defendants that would justify the equitable relief sought. Therefore, Plaintiffs fail to establish Article III standing in this action. The Court's conclusion is informed by the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ("*Lyons*").

### 1. *City of Los Angeles v. Lyons*

*Lyons* is the "seminal case" on the issue of equitable standing. *See MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 594 (S.D.N.Y. 2011). In *Lyons*, the plaintiff, Lyons, claimed that he had been subject to an illegal chokehold during a police traffic stop. *Lyons*, 461 U.S. at 97-98. Lyons sued the city of Los Angeles and sought damages for his past injuries, an injunction barring the use of chokeholds in the future, and declaratory relief that the "chokehold practice" was unconstitutional. *Id.* at 98. In the end, the Supreme Court determined that Lyons had failed to demonstrate Article III standing for the injunctive and declaratory relief sought because he did not demonstrate a "'likelihood of substantial and immediate irreparable injury.'" *Id.* at 111 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). The Supreme Court explained:

> In order to establish an actual controversy in this case, Lyons would have had *not only* to allege that he would have another encounter with the police *but also* to make the incredible assertion either (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning, or (2) that the City ordered or authorized police officers to act in such manner.
>
> [ . . .]
>
> Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional.

*Id.* at 105-106, 112 (emphasis added).

As a result, pursuant to *Lyons'* holding, a plaintiff seeking injunctive or declaratory relief "must meet the dual requirements of showing: 1) that it is likely that they again will find themselves in the same or similar circumstances giving rise to the allegedly unconstitutional conduct; and 2) that it is likely that they again will be subjected to the allegedly unconstitutional conduct." *Travelers Social Club v. Pittsburgh*, 685 F. Supp. 929, 932 (W.D. Pa. 1988). In this case, Plaintiffs do neither.

### 2. The Individual Plaintiffs Do Not Possess Article III Standing to Pursue Injunctive or Declaratory Relief

None of the Individual Plaintiffs plausibly allege that they will likely find themselves in the same or similar circumstances giving rise to the allegedly unconstitutional conduct; and that they again will be subjected to the allegedly unconstitutional conduct. *See id.*

First, the Individual Plaintiffs do not plausibly allege that they will find themselves in a similar situation with the WPD again. The Amended Complaint details a series of unconnected anecdotes, each involving an Individual Plaintiff and the WPD. (*See* D.I. 13). Several alleged constitutional violations occurred under seemingly unique circumstances.[4] For example, Plaintiff

---

[4] Plaintiff LaMotte Johns alleges that WPD illegally searched his home when they were looking for his former roommate. (D.I. 13 ¶ 36). Plaintiff Tranecka Charles alleges that WPD illegally searched her home when she called paramedics to treat her daughter, who died from cardiac arrest. (*Id.* ¶ 38). Plaintiff Anthony Green alleges that he was illegally stopped and searched in his vehicle one time and stopped and frisked another time. (*Id.* ¶ 48, 66). Plaintiff Nickea Rowe alleges that she was stopped when (1) WPD officers were looking for a suspect, and (2) when she had allegedly run a stop sign. (*Id.* ¶ 57). Plaintiff Semaj Gwyn alleges that he was stopped twice in his vehicle. (*Id.* ¶ 66). Plaintiff Natasha Green alleges she was unconstitutionally stopped when officers asked her whether she was an individual in a photograph or could identify that individual. (*Id.* ¶ 68).

The Court also observes that the Amended Complaint contains allegations from "Terrel Dixon-El" and "Charles M. Breakley, Jr.," neither of whom are named Plaintiffs. (D.I. 13, ¶¶ 44, 45). The Amended Complaint also fails to specify whether these individuals

Tranecka Charles alleges that her rights were violated when the WPD responded to an emergency aid call; and Plaintiffs LaMotte Johns, Nickea Roe, and Natasha Green, each allege that their rights were violated when the WPD was seeking to identify other, specific individuals. In these instances, "it is surely no more than speculation to assert [ ] that [the Individual Plaintiffs] will again be involved in one of these unfortunate instances." *Lyons*, 461 U.S. at 108. Similarly, Plaintiffs Semaj Gwyn and Anthony Green – who have each encountered WPD on two separate occasions – do not plead facts from which it is reasonable to infer that they will have a future encounter with WPD. Although the Individual Plaintiffs may continue to encounter the WPD, as a result of living in Wilmington and operating on the City's roadways, "that, alone, does not create a substantial likelihood of a real and immediate threat of future harm." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 105 (E.D.N.Y. 2016) (holding that individual plaintiffs who alleged separate incidents of unlawful traffic stops did not have standing to pursue injunctive relief). Therefore, the Individual Plaintiffs have not moved "a hypothetical future run-in with law enforcement from the realm of conjecture to that of certainty." *Johnson v. McCowan*, 549 F. Supp. 469, 478 (W.D. Va. 2021).

Second, the Individual Plaintiffs do not plausibly allege that it is likely that they will be subject to the unconstitutional conduct again. In order to do so, the Individual Plaintiffs must "make the incredible assertion" that (1) all WPD officers *always* act in accordance with the unconstitutional custom or policy, or (2) that the City ordered or authorized WPD officers to act in such manner. *Lyons*, 461 U.S. at 105. The Individual Plaintiffs do not plausibly allege that every WPD officer will always engage in the alleged unconstitutional conduct, nor do the

are members of NAACP-DE. As a result, the Court does not address allegations from these third parties in analyzing whether the Individual Plaintiffs have demonstrated standing to seek injunctive relief.

Individual Plaintiffs plausibly allege that the City ordered or authorized such conduct. *See, e.g., Martinez v. Marino*, 2007 U.S. Dist. LEXIS 44421, at *15 (E.D. Pa. June 18, 2007) (finding that a plaintiff failed to "meet the requirements the Supreme Court set forth in *Lyons* because [plaintiff] has not alleged that police officers always conduct illegal searches. . . or that the City of Allentown authorizes police officers to conduct illegal searches."). In other words, the Individual Plaintiffs have not plead factual allegations from which it is reasonable to infer that an unconstitutional policy currently exists and may be acted upon.

This case can be distinguished from other cases in this Circuit where the court determined that the plaintiff sufficiently alleged the existence of an unconstitutional policy and thus could demonstrate that the unconstitutional violation was likely to reoccur. In those cases, the plaintiffs plead specific facts from which the existence of an unconstitutional policy was plausible. *See, e.g., McBride v. Cahoone*, 820 F. Supp. 2d 623, 635 (E.D. Pa. 2011) (observing that a chapter of a procedure manual explicitly authorized the challenged conduct); *Collison v. City of Philadelphia*, Civil Action No. 12-6114, 2013 WL 5707802, 2013 U.S. Dist. LEXIS 150691, at *5, *19-21 (E.D. Pa. Oct. 18, 2013) (observing that the language of a written policy could undermine the plaintiff's rights). Here, in contrast, the City's written policies expressly disavow the alleged unconstitutional conduct. (*See* D.I. 21 at 10 (referring to Directives 6.10K and 6.75)). Illustratively, the Amended Complaint states, and thus Plaintiffs concede, that "the Department ostensibly has a policy *prohibiting* racial profiling" and that searches of homes, individuals, or vehicles, of persons not on probation, "are *not* statutorily authorized." (D.I. 13 ¶¶ 30, 94) (emphasis added). Similarly, the WPD's alleged policies of "not requiring officers to report or record all stops, frisks, and searches," and not "deploying body cameras" do not encourage or authorize WPD officers to commit the alleged unconstitutional actions. (*Id.* ¶¶ 71-79). Instead,

these policies are facially neutral.    Although Plaintiffs claim that the City has "implemented and enforced a policy, practice, and/or custom" of unconstitutional pedestrian stops, traffic stops, searches, seizures, and racially biased policing, these allegations are vague, conclusory, and unsupported by the pleadings.[5]    (*Id.* ¶¶ 104, 107 114, 118, 123, 131).

In summary, the Individual Plaintiffs do not plausibly allege that it is likely that they again will find themselves in the same or similar circumstances or that all WPD officers act in the

---

[5]    The contours of Plaintiffs' municipal liability claim, also known as a *Monell* claim, are not entirely clear. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  The Amended Complaint seemingly alleges that, through the guises of "Operation Safe Streets," WPD officers have been able to engage in unconstitutional conduct.    Problematically, however, Operation Safe Streets, itself, is not an unconstitutional policy or program.    (*See* D.I. 13 ¶ 21).  Operation Safe Streets "targets high-risk probationers to ensure that they remain in compliance with curfews and other conditions of probation."    (*Id.*)    Additionally, there are no allegations from which the Court could infer that the alleged unconstitutional conduct was perpetuated by WPD officers involved in Operation Safe Streets.    The only Individual Plaintiff who alleges that he was subject to an interaction with a WPD officer in Operation Safe Streets is Plaintiff Semaj Gwyn ("Mr. Gwyn").  (D.I. 13 ¶ 57).  Mr. Gwyn, however, does not plausibly allege that his encounter with the WPD was violative of the Fourth Amendment because the Court cannot infer a lack of probable cause for the vehicle stop.  *See Carver v. Talanca*, 2025 WL 84140, 2025 U.S. Dist. LEXIS 5933, at *8-9 (M.D. Pa. Jan. 13, 2025) (dismissing the plaintiffs' complaint where plaintiffs' failed to sufficiently "allege the absence of a warrant, absence of consent, or details of the events" to conclude that a Fourth Amendment violation occurred); *see also Johenkins v. Williams*, 3:25-CV-007, 2025 WL 841611, 2025 U.S. Dist. LEXIS (M.D. Pa. Feb. 24, 2025) (holding that a plaintiff who alleges  Fourth Amendment violation must provide further factual allegations concerning the traffic stop).    To the extent that Plaintiffs premise their *Monell* claim on a separate theory of "deliberate indifference," the Court finds that the related allegations are fatally conclusory.    (*See* D.I. 13 ¶ 3).    There are no factual allegations from which it is reasonable to infer that Defendants "knew of and disregarded an excessive risk" to the constitutional rights of Black citizens in Wilmington.    Nevertheless, "[w]hether these allegations, if proven would give rise to municipal liability under *Monell* is irrelevant because they do not confer standing to sue for injunctive relief under *Lyons*."    *MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 601 (S.D.N.Y. 2011); *see also Sims v. City of Seattle*, Civil Action No. 2:22-00483, 2023 WL 3619019, 2023 U.S. Dist. LEXIS 91005, at *15-16 (W.D. Wash. May 24, 2023).

alleged, unconstitutional manner.    Therefore, the Individuals Plaintiffs lack Article III standing to

seek injunctive and declaratory relief.

### 3.    NAACP-DE Does Not Possess Article III Standing to Pursue Injunctive or Declaratory Relief

Organizations, like NAACP-DE, must also demonstrate Article III standing for each form

of relief sought.[6]  *See FDA v. All. for Hippocratic Medicine*, 602 U.S. 367, 393-94 (2024).

NAACP-DE, however, fails to allege specific facts that establish it has standing to seek injunctive

or declaratory relief.

First, NAACP-DE cannot demonstrate that harm to it or its members is "imminent" or

"certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 407-09 (2013).   For the

reasons explained above, NAACP-DE does not plausibly allege – and cannot plausibly allege –

that the WPD *always* engages in unconstitutional conduct or that the City ordered the WPD to

engage in such conduct.   *See Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 981

(6th Cir. 2020) (stating same and holding that an organization failed to demonstrate standing for

---

[6]    An organization may establish Article III standing in two ways.  First, an organization may establish that it has "organizational standing."  Organizational standing exists when an organization "claim[s] it has suffered an injury in its own right."  *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).  To establish organizational standing, the organization must "satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals."  *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394 (2024).  Second, and alternatively, an organization may establish that it has "associational standing."  Associational standing exists when the organization has "standing solely as the representative of its members."  *Students for Fair Admissions Inc.*, 600 U.S. at 199.  To establish associational standing, the organization must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).

injunctive relief).  As such, the Court cannot reasonably infer that the WPD will imminently harm NAACP-DE.[7]  *See Alliance*, 602 U.S. at 395.

Second, NAACP-DE's organizational injuries are alleged to be past harms.  Illustratively, NAACP-DE alleges that "combating police abuses in Wilmington *consumed* [its] limited time and resources and *diverted* the organization from working on other projects and advancing other goals."  (D.I. 13 ¶ 12 (emphasis added)).  However, NAACP-DE's past harms are not a basis for injunctive relief.[8]  *See, for example, Knife Rights, Inc. v. Vance*, 802 F.3d 377, 388 (2d Cir. 2015) (explaining that even if expenditures "perceptibly impair [the organization's] activities, they at best demonstrate a past injury," which "might admit standing for sue for compensatory damages" but cannot be "an injury that can be redressed through [ ] prospective declaratory and injunctive relief."); *see also Action NC v. Strach*, 216 F. Supp. 597, 644 (M.D.N.C 2016) ("Thus, past harms suffered by Organizational Plaintiffs' diversion of resources cannot be prevented at this point through the issuance of an injunction.").  Although it is true that "generic allegations of past harm" can "serve as a launching pad for a showing of imminent future injury," the present allegations require the Court to improperly "speculate about when (if ever)" the alleged policy will impair NAACP-DE's mission and require it to expend resources again.  *Tennessee Conf. of the NAACP v. Lee*, Civil Action No. 24-5546, 2025 U.S. App. LEXIS 13814, at *23 (6th Cir. 2025).

---

[7]     Additionally, and in the same vein, an organization cannot manufacture an injury "by choosing to make expenditures based on hypothetical future harm."  *Clapper*, 568 U.S. at 402.  Therefore, NAACP-DE may not establish its standing by affirmatively taking actions to combat the allegedly unconstitutional policy.  *See FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394 (2024).

[8]     "Although past harm is relevant, the ultimate standing inquiry remains 'whether there is a real and immediate threat of repeated injury.'"  *District of Columbia Common Cause v. District of Columbia*, 858 F.2d 1, 8 (D.C. Cir. 1988) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

Therefore, Plaintiffs do not persuade the Court, as is their burden, that NAACP-DE faces ongoing or imminent harm from the WPD or City.

Third, the Court cannot determine whether any member of NAACP-DE faces an imminent risk of injury from the City because it cannot identify any NAACP-DE member.   The Amended Complaint does not specify which of the Individual Plaintiffs, if any, are NAACP-DE members. (D.I. 16 at 8 (Defendants observing same)).   Instead, NAACP-DE alleges, in conclusory fashion, that its "members and constituents, including certain of Individual Plaintiffs" have suffered or will suffer harm.   (D.I. 13 ¶ 13).   These vague allegations, however, do not suffice.   *See, e.g., Chamber of Commerce for Greater Philadelphia v. City of Philadelphia*, Civil Action No. 17-1548, 2017 U.S. Dist. LEXIS 231022 (E.D. Pa. May 30, 2017) (explaining that "broad allegations about [plaintiff's] members simply do not meet the requirements of *Summers*.").   Further, no affidavits or declarations were attached to the Amended Complaint through which the Court could decipher who the NAACP-DE members were and if they are at imminent risk of future harm.   *See Associated Gen. Contrs. of Am. v. Cal. DOT*, 713 F.3d 1187, 1194 (9th Cir. 2013) (holding that a plaintiff-organization lacked standing because it "does not identify any affected members by name nor has it submitted declarations by any of its members attesting to harm they have suffered or will suffer.").   Therefore, there is no plausible basis to infer that a member of the NAACP-DE is at risk of imminent injury.   "At most, [NAACP-DE's] allegations suggest it may help such an individual at some point down the road," which is insufficient to demonstrate standing.   *Lee*, 2025 U.S. App. LEXIS 13814, at *23.

As a result, like the Individual Plaintiffs, NAACP-DE has failed to establish that it has standing to seek injunctive or declaratory relief.

14

**B.**    **The Class Cannot Be Certified**

Plaintiffs also seek "an order certifying this as a class action" and "a class wide judgment declaring that the Wilmington Police Department's policies, practices, and customs violate the Constitution and statutes of the United States." (D.I. 13 at 37 (Relief Requested)). In a putative class action lawsuit, at least one "'named plaintiff must meet all the jurisdictional requirements to bring an individual suit asserting the same claims, including standing.'" *Neale v. Volvo Cars of N. Am., LLC.*, 794 F.3d 353, 361 n. 3 (3d Cir. 2015) (quoting 5 Jerold S. Solovy et al., Moore's Federal Practice - Civil § 23.63 (3d ed. 1997)); *see also McNair v. Synpase Group, Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (stating same with regards to classes with claims for prospective relief). Where, as here, the class seeks declaratory relief, at least one class representative must demonstrate Article III standing for such relief. *See Robinson v. Hornell Brewing Co.*, 2012 U.S. Dist. LEXIS 51460, at \*10-11 (D.N.J. Apr. 11, 2012) (citing to *McNair*, 672 F.3d at 223-224)). For the reasons previously explained, none of the Individual Plaintiffs possess Article III standing to pursue injunctive or declaratory relief. As a result, the Court lacks subject matter jurisdiction to consider class certification.[9]

**V.    CONCLUSION**

For the reasons explained above, Plaintiffs have not demonstrated Article III standing to pursue their claims. Therefore, the Court lacks subject matter jurisdiction to address the merits

---

[9]    Further, Plaintiffs' lack of Article III standing requires denial of class certification under Federal Rules of Civil Procedure 23(b)(2) ("Rule 23(b)(2)"). (D.I. 13 at 37). Rule 23(b)(2) provides, "a class action may be maintained if Rule 23(a) is satisfied and if . . . final injunctive relief or *corresponding* declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2) (emphasis added). Though Plaintiffs seek a class-wide declaratory judgment, "such declaratory relief cannot 'correspond' to any injunctive relief at all, as [Plaintiffs do] not have standing to pursue an injunction." *Torrent v. Yakult U.S.A., Inc.*, Civil Action No. 15-00124, 2016 U.S. Dist. LEXIS 130700, at \*13 (C.D. Cal. Jan. 5, 2016).

of Plaintiffs' First Amended Complaint (D.I. 13) and Defendants' Motion to Dismiss (D.I. 15). The First Amended Complaint (D.I. 13) is dismissed, without prejudice, for lack of subject-matter jurisdiction.[10]   Defendants' Motion to Dismiss (D.I. 15) is denied-as-moot.   The Court will issue an Order reflecting the findings and conclusions of this Opinion.

---

[10]    The Third Circuit has instructed district courts to dismiss a complaint, without prejudice, where a plaintiff lacks Article III standing.   *See Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 109 (3d Cir. 2019): *see also Coretll v. Alcon Labs*, 874 F.3d 154, 164 n.7 (3d Cir. 2017) (stating that "[b]ecause the absence of standing leaves the court without subject matter jurisdiction to reach a decision on the merits, dismissals 'with prejudice' for lack of standing are generally improper.").